Filed 2/2/26  P. v. Endicott CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E085152 |
| v. | (Super.Ct.No. CR21880) |
| LEON ENDICOTT, | OPINION |
|     Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Steven G. Counelis, Judge.  Affirmed.

Jonathan M. Lynn for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene Sevidal, Robin Urbanski and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

# INTRODUCTION

Defendant and appellant Leon Endicot appeals from the trial court's postjudgment order denying his Penal Code[1] section 1172.6 petition for resentencing of his first degree felony murder (§ 187, subd. (a)) conviction following an evidentiary hearing. Defendant argues there is insufficient evidence to support the trial court's finding that defendant was a major participant who acted with reckless indifference to human life during the course of a burglary. We disagree and affirm the trial court's order.

# II.

# FACTUAL AND PROCEDURAL BACKGROUND

## A. *Factual Background*[2]

Early in the morning on December 2, 1983, a police officer stopped defendant and his brother codefendant Anthony Endicott[3] as they were driving very slowly through a neighborhood in Sun City. The day previously a residence in Sun City had been burglarized and various items were taken, including brass candlesticks, silverware, a

---

[1] All future statutory references are to the Penal Code.

[2] The factual background is taken from the reporter's transcript from his direct appeal, case No. E001931, which is contained in Exhibit No. 1, and will be denoted as "RT" "1RT" and "1CT" will refer to the reporter's transcript and clerk's transcript, respectively, from this case. Exhibit No. 1 includes a copy of this court's opinion from case No. E001931, a copy of the reporter's transcript from case No. E001931, and a copy of the clerk's transcript from case No. E001931. On February 21, 2025, we ordered the superior court clerk to transmit Exhibit No. 1 to this court and to send a copy to counsel.

[3] For clarity, Anthony will be referred to by his first name. No disrespect is intended.

Tiffany picture frame, a television set, credit cards, and a vacuum cleaner. The brothers claimed they were looking for work.

Sometime prior to December 13, 1983, defendant had trimmed some trees at 83-year-old Beatrice Hatfield's home. Defendant knew that Hatfield had money, that she was always there, and that she never left her residence. Defendant and Anthony planned to burglarize Hatfield's home.

On the night of December 13, 1983, defendant and Anthony went into the house through the back door. As they were going through cabinets in the home, defendant heard Hatfield in a back bedroom. The brothers went back to the bedroom where Hatfield was located, and defendant stood by the bedroom door while Anthony attacked Hatfield. Anthony hit Hatfield multiple times before taking out his knife and slitting her throat. Defendant and Anthony then took some mints and a banana from the house before leaving. As they were leaving, Anthony remarked that "the banana wasn't even a Chiquita."

On the afternoon of December 13, 1983, Anthony visited a friend's home, during which time he sharpened the knife that he always carried in a sheath on his belt. Anthony left but returned later that same night and sharpened his knife again. Defendant arrived a short while later, and he and Anthony left the house together.

Around 8:00 p.m. on December 13, 1983, defendant and Anthony went to pick up their friend Troy White from his work. They then dropped him off at his home in Perris. Around 1:00 to 2:00 a.m., defendant and Anthony returned to Troy White's apartment.

Other people at the apartment overheard defendant and Anthony mumbling to one another. They heard Anthony tell defendant to shut up, forget it, and it was over. Not long thereafter, Anthony started washing his knife in the kitchen sink, claiming that he was washing "catsup" off the knife. Defendant stated to Anthony that he "didn't have to cut the lady's throat from ear to ear," and Anthony again told defendant to be quiet.

During the course of the conversation between defendant and Anthony, their friends also overheard them discussing their night's activities, including that they went to "rob a house" in Sun City. As defendant and Anthony were talking, Anthony continued to clean his knife, after which he sharpened it again. Defendant instructed Anthony to "get rid" of the knife. Anthony and Troy White then smashed the knife with a hammer, put the pieces into an empty beer can, and threw it into the trash.

The next morning, on December 14, 1983, Troy White and his brother told their employer what defendant and Anthony had said the night before about murdering an elderly woman while they were burglarizing her house. They all decided to wait until they could determine if the story was true, and to check the newspaper to see if there was any mention of an elderly woman being murdered. Later that same day, defendant and Anthony tried to sell a women's small gold watch and a vacuum cleaner to an acquaintance. Meanwhile, Hatfield's neighbors grew concerned because Hatfield's newspaper was still in her driveway, which was unusual. Upon checking Hatfield's home, neighbors discovered the door unlocked, the house ransacked, and Hatfield dead in her bed. The neighbors contacted the police.

4

Police officers located a jewelry box which had contained a woman's watch. Defendant's fingerprints were found on the inside of the kitchen door, and Anthony's fingerprints were found on the patio window. A subsequent autopsy showed numerous head and neck injuries to Hatfield, including a broken jaw, a cut on her lip, and a three-inch knife cut that severed her carotid artery.

The day after Hatfield's body was discovered, the employer of the White brothers read an article in the newspaper about Hatfield's murder, which was consistent with what the White brothers had told him about defendant and Anthony. The employer thereafter notified the police. The police interviewed the White brothers, after which they agreed to retrieve the broken knife from the trash. Defendant and Anthony were located shortly thereafter and placed under arrest.

B. *Procedural Background*

In 1984, after a joint trial, a jury convicted defendant and his brother codefendant Anthony of first degree felony murder (§§ 187, subd. (a), 189) and first degree burglary (§§ 459, 460). The jury also convicted Anthony of first degree burglary of another residence (§§ 459, 460). Defendant pled nolo contendere to misdemeanor receiving stolen property (§ 496). The jury also found true the special circumstance allegation that Anthony committed the murder while engaged in the commission of burglary (§ 190.2, subd. (a)( 17)( vii)). The jury further found true Anthony personally used a knife (§ 12022, subd. (b)) in the commission of the murder and the burglary of the Hatfield

residence. In 1985, the trial court sentenced defendant to a total indeterminate term of 25 years to life in state prison.

Defendant subsequently appealed. In 1988, this court affirmed defendant's judgment in its entirety in an unpublished opinion, case No. E001931.

On August 30, 2019, defendant filed a petition for resentencing pursuant to former section 1170.95 (now section 1172.6). Defendant claimed, among other things, that there had "been a prior determination by a court or jury" that he was "not a major participant and/or did not act with reckless indifference to human life . . . ."

On December 17, 2021, the trial court issued an order to show cause and set the matter for an evidentiary hearing.

On February 28, 2022, defendant's appointed counsel filed a brief in support of his petition for resentencing.

On March 27, 2024, defendant's retained counsel filed a supplemental brief in support of his petition for resentencing and response to the People's brief.

On November 8, 2024, the trial court conducted an evidentiary hearing during which defendant and his counsel were present. At that time, the parties relied upon the unpublished opinion from this court in case No. E001931, the reporter's transcript, and the clerk's transcript from defendant's underlying direct appeal in case No. E001931, all of which were reviewed by the trial court. Following argument by counsel, the court took the matter under submission, provided the parties an opportunity to submit further supplemental briefing, and set the matter for a final hearing date.

6

On December 6, 2024, the trial court conducted a further hearing. Defendant was present with his counsel. The court announced that it was denying the petition for resentencing and filed a nine-page written ruling order setting forth the basis for its ruling. The trial court found that defendant was a major participant in the underlying felony who acted with reckless indifference to human life, and concluded the People had met the burden of proving defendant could still be convicted of murder after the changes to the law. The court noted that defendant had a role in planning the burglary; defendant knew Anthony had a knife and was aware of the risk and danger posed; defendant was present at the scene and did nothing to stop Anthony from killing Hatfield; and defendant did not seek to aid or help for Hatfield after Anthony slit her throat. The court also found that defendant acted with reckless indifference to human life. The court pointed out that defendant knew Anthony was armed with a knife; defendant was physically present at the scene and knew Hatfield was always there; defendant planned to burglarize Hatfield in the middle of the night; and defendant did nothing to stop his brother's violence or seek aid for Hatfield after her throat was slit, despite both defendant and Anthony's youth (defendant was 18 years old at the time of the murder, and Anthony was 18 years old). Defendant timely appealed.

7

III.

DISCUSSION

Defendant argues that substantial evidence does not support the trial court's finding that he was a major participant in the burglary who acted with reckless indifference to human life.

A. *Section 1172.6 Generally*

Under the ameliorative changes in the law effected by Senate Bill No. 1437 (2017-2018, Reg. Sess.) (Stats. 2018, ch. 1015), malice must be proved to convict a principal of murder, except under the narrowed felony-murder rule set forth in section 189, subdivision (e), and may not be imputed based solely on an individual's participation in a crime (§ 188, subd. (a)(3)), thereby eliminating the natural and probable consequences doctrine as a basis for convicting a defendant of murder. (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843, 847 (*Gentile*).) The amended felony-murder law requires the People to prove specific facts relating to the defendant's individual culpability: The defendant was the actual killer (§ 189, subd. (e)(1)); although not the actual killer, the defendant assisted in the commission of the murder with the intent to kill (§ 189, subd. (e)(2)); or the defendant was a major participant in an underlying felony listed in section 189, subdivision (a), and acted with reckless indifference to human life, "as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3); *People v. Strong* (2022) 13 Cal.5th 698, 708 (*Strong*).)

8

Section 1172.6 permits an individual convicted of felony murder or murder under the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not now be convicted of murder because of Senate Bill No. 1437's changes to the definitions of the crime. (*Strong*, *supra*, 13 Cal.5th at p. 708; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *Gentile*, *supra*, 10 Cal.5th at p. 843.)

If the petitioner makes the requisite prima facie showing he or she falls within the provisions of section 1172.6 and is entitled to relief, the trial court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c) & (d); see *Lewis*, *supra*, 11 Cal.5th at p. 957.)

At the evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) The trial court may consider evidence "previously admitted at any prior hearing or trial that is admissible under current law." (*Ibid.*) If the trial court applied the proper standard and burden of proof, the denial of a petition after an evidentiary hearing is reviewed for substantial evidence. (*People v. Vargas* (2022) 84 Cal.App.5th 943, 951; *People v. Ramirez* (2021) 71 Cal.App.5th 970, 985 (*Ramirez*).) Under this standard, " ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial

evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] We determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.] In so doing, a reviewing court "presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' [Citations.]" (*Vargas*, *supra*, 84 Cal.App.5th at p. 951.)

The overlapping factors for assessing whether a defendant was a major participant in an underlying serious felony and acted with reckless indifference to human life for purposes of section 190.2, subdivision (d), and thus for section 189, subdivision (e)(3), were identified in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), and reiterated more recently in *In re Scoggins* (2020) 9 Cal.5th 667 (*Scoggins*).

To determine whether a defendant was a major participant in one of the specified felonies, the *Banks* court listed the following factors: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her

10

own actions or inaction play a particular role in the death?  What did the defendant do after lethal force was used?" (*Banks*, *supra*, 61 Cal.4th at p. 803, fn. omitted.)

As to whether a defendant acted with reckless indifference to human life, the Supreme Court enumerated the following nonexclusive factors:  "Did the defendant use or know that a gun would be used during the felony?  How many weapons were ultimately used?  Was the defendant physically present at the crime?  Did he or she have the opportunity to restrain the crime or aid the victim?  What was the duration of the interaction between the perpetrators of the felony and the victims?  What was the defendant's knowledge of his or her confederate's propensity for violence or likelihood of using lethal force?  What efforts did the defendant make to minimize the risks of violence during the felony?" (*Scoggins*, *supra*, 9 Cal.5th at p. 677; accord, *Banks*, *supra*, 61 Cal.4th at p. 808.)  " ' "[N]o one of these considerations is necessary, nor is any one of them necessarily sufficient." ' " (*Scoggins*, *supra*, 9 Cal.5th at p. 677.)  Courts must view "the totality of the circumstances to determine whether [the defendant] acted with reckless indifference to human life." (*Ibid*.)  The major participant factors "significantly overlap" with the reckless indifference factors.  (*Clark*, *supra*, 63 Cal.4th at p. 615.)  Appellate courts have recognized youth as another factor bearing on whether a defendant acted with reckless indifference to human life.  (E.g., *People v. Keel* (2022) 84 Cal.App.5th 546, 558-559; *Ramirez*, *supra*, 71 Cal.App.5th at pp. 990-991; *In re Moore* (2021) 68 Cal.App.5th 434, 454-455.)

11

B. *Analysis*

It is uncontested that defendant was not the actual killer. As discussed, however, he remains guilty of murder under current law if he "was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e)(3).) Defendant argues the trial court's finding that he acted with reckless indifference to human life is not supported by substantial evidence.

Defendant does not challenge the court's determination that he was a major participant in the burglary and murder of Hatfield. But there is significant overlap between being a major participant and having reckless indifference to human life and in general, " 'the greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.' " (*Clark*, *supra*, 63 Cal.4th at p. 615.) Accordingly, we will also review the court's determination that defendant was a major participant in the felony murder of Hatfield.

Substantial evidence shows that defendant was a major participant in the burglary. He was the one who planned and proposed it. He and his brother were seen casing the neighborhood weeks before the burglary. Defendant suggested Hatfield's home because he believed she had money in the home and was the instigator of the burglary. Defendant was aware Anthony had a knife and believed Hatfield was "always there." Thus, he would have been aware of the risk Hatfield would confront them and that his brother would use a knife against her to prevent their discovery. Defendant was at the scene of

12

the murder, standing right outside the door, and could hear Anthony striking Hatfield before slitting her throat. He could have prevented the murder by stopping his brother from killing Hatfield or he could have assisted in aiding Hatfield after her throat was slit. Instead, defendant and Anthony proceeded to take food from her house before fleeing the scene.

This active participation and presence during every aspect of the planning and execution of the crime leaves little doubt that defendant was a major participant in the underlying offense. These facts, which are supported by the record, together provide sufficient evidence in support of the court's conclusion that beyond a reasonable doubt defendant was a major participant in the underlying burglary and murder.

Substantial evidence also shows defendant acted with reckless indifference to human life. "Reckless indifference to human life has a subjective and an objective element. [Citation.] As to the subjective element, '[t]he defendant must be aware of and willingly involved in the violent manner in which the particular offense is committed,' and he or she must consciously disregard 'the significant risk of death his or her actions create.' [Citations.] As to the objective element, ' "[t]he risk [of death] must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him [or her], its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." ' " (*Scoggins*, *supra*, 9 Cal.5th at p. 677; see *People v. Cody* (2023) 92 Cal.App.5th 87, 106.)

Although " '[a]wareness of no more than the foreseeable risk of death inherent in any [violent felony] is insufficient' to establish reckless indifference to human life" and " 'only knowingly creating a "grave risk of death" ' satisfies the statutory requirement," "[r]eckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.' " (*Scoggins*, *supra*, 9 Cal.5th at pp. 677, 676.) "Examples include 'the person who tortures another not caring whether the victim lives or dies, or the robber who shoots someone in the course of the robbery, utterly indifferent to the fact that the desire to rob may have the unintended consequence of killing the victim as well as taking the victim's property.' " (*Id.* at p. 676.) Reckless indifference "encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions." (*Clark*, *supra*, 63 Cal.4th at p. 617.)

Substantial evidence supports the trial court's finding that beyond a reasonable doubt defendant acted with reckless indifference to human life. That finding relies on much of the same evidence as the court's finding he was a major participant. (See *Clark*, *supra*, 63 Cal.4th at pp. 614-615 [referring to "the interrelationship between the two elements" and the " 'significant[ ] overlap' " in the requirements for being a major participant and having reckless indifference to human life]; *People v. Cody*, *supra*, 92 Cal.App.5th at p. 113 [major participant finding is "itself . . . supportive" of reckless indifference finding].) Here, defendant was aware that Anthony was armed with a knife and stood outside the door as Anthony struck and slit Hatfield's throat. Defendant did

14

nothing to minimize the risk of violence.  Although it is unclear how long the interaction lasted, defendant and Anthony's decision to burglarize Hatfield's home in the middle of the night, knowing Hatfield would be present, increased the risk that assaulting or killing the 83-year-old victim would be necessary to prevent apprehension.  That defendant was present outside the door while Anthony beat and stabbed the vulnerable victim suggests he had an opportunity to restrain Anthony from hitting and knifing the victim in the throat and head.  Hatfield's autopsy showed numerous head and neck injuries to Hatfield, including a broken jaw, a cut on her lip, and a three-inch knife cut that severed her carotid artery.

Moreover, defendant did nothing to minimize Anthony's beating of the 83-year-old vulnerable victim or aid Hatfield after Anthony stabbed her with his knife.  Rather, in the hours that followed Hatfield's murder, defendant took action to conceal evidence of the crime, encouraging Anthony to destroy the knife he used during their crime.  Shortly thereafter, defendant and Anthony were attempting to sell a watch they stole from Hatfield's home, in addition to property they stole during a prior burglary.  Numerous cases have recognized that such a failure to seek or provide aid is a highly significant factor indicative of indifference to the life of the victim.  For example, in *People v. Gonzalez* (2016) 246 Cal.App.4th 1358, 1386, affirmed in *People v. Gonzalez* (2018) 5 Cal.5th 186, the court found that the defendant exhibited reckless indifference to human life when he fled with the shooter instead of rendering aid and accompanied the shooter when he disposed of the murder weapon.  (See *People v. Smith* (2005) 135 Cal.App.4th

15

914, 927-928 [the defendant acted with reckless indifference to human life because, knowing that the victim had been assaulted and seeing his cohort leave the room covered in blood, he chose to flee with the assailant rather than come to the victim's aid or summon help]; *People v. Lopez* (2011) 198 Cal.App.4th 1106, 1117, disapproved in part by *Banks*, *supra*, 61 Cal.4th at p. 809, fn. 8 [the defendant exhibited "utter indifference to the victim's life" when she lured the victim into a secluded alley and after hearing gunshot failed to help the victim or call 911]; *People v. Medina* (2016) 245 Cal.App.4th 778, 792-793 [the defendant, who had participated in the robbery but left prior to the shooting, exhibited a reckless indifference to human life when he returned to the scene to aid the shooter but made no effort to offer aid or inquire as to the victim].)

Although the beating and stabbing of the victim may have been spontaneous, the burglary of Hatfield was in no way a spontaneous crime of opportunity. The evidence established defendant knowingly planned and participated in a residential burglary, knowing the victim would be home. The totality of the circumstances show defendant was willing to resort to killing the victim to carry out the burglary. (See *Scoggins*, *supra*, 9 Cal.5th at pp. 676-677 ["Reckless indifference 'encompasses a willingness to kill (or to assist another in killing) to achieve a distinct aim, even if the defendant does not specifically desire that death as the outcome of his actions' "].)

Defendant's attempts to reinterpret the facts do not undermine the court's findings. For example, defendant suggests that there was no evidence he knew Anthony would use a knife that he regularly carried to kill Hatfield or that he was aware of Anthony's

16

propensity for violence or that he had the ability to restrain Anthony or minimize the risk. He also claims a knife is not an inherently dangerous weapon.[4] Further, defendant asserts "[t]here was no evidence the brothers planned for this to be a lengthy operation," instead "the stabbing was more of an impulsive response to the victim's unexpected resistance."

But defendant's various arguments about the facts, and his additional contentions that go to witness credibility, conflate the role of the trial court with our role as an appellate court applying the substantial evidence standard of review. The trial court was charged with considering the totality of the circumstances germane to determining whether defendant was a major participant who acted with reckless indifference to human life. (See *Strong*, *supra*, 13 Cal.5th at p. 706; *Scoggins*, *supra*, 9 Cal.5th at p. 677.) "Under our substantial evidence standard of review, we defer to the trial court's implicit credibility findings and accept all reasonable inferences from the evidence." (*People v. Oliver* (2023) 90 Cal.App.5th 466, 482.) Our role is not to reweigh the evidence, judge the credibility of witnesses, or resolve evidentiary conflicts. (See *In re Caden C.* (2021) 11 Cal.5th 614, 640.) Rather, determinations are " 'upheld if . . . supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence.' " (*Ibid*.)

---

[4] While defendant is correct that a knife is not considered an inherently dangerous weapon (see *People v. Aledamat* (2019) 8 Cal.5th 1, 6 ["Because a knife can be, and usually is, used for innocent purposes, it is not among the few objects that are inherently deadly weapons."]), this claim does not aid defendant as it is not a factor in the determination of whether defendant acted with reckless indifference to human life.

Contrary to defendant's suggestion, the trial court did not conflate the major participant factors with the reckless indifference factors. Rather, the court considered the two questions separately, and appropriately enumerated and analyzed the factors applicable to each question. Further, the trial court's consideration of whether defendant acted with reckless indifference to human life accurately considered the precise factors set forth by our high court in *Scoggins*, *supra*, 9 Cal.5th at page 677 and *Clark*, *supra*, 63 Cal.4th at page 618 to 622.

The record shows the trial court conducted the required " 'fact- intensive, individualized inquiry' into where [defendant's] conduct falls on the spectrum of culpability" for nonkiller felony murderers. (*People v. Emanuel* (2025) 17 Cal.5th 867, 883.) The court considered the evidence introduced at defendant's trial and at the evidentiary hearing on his section 1172.6 petition in light of the factors identified in *Banks*, *supra*, 61 Cal.4th 788, and *Clark*, *supra*, 63 Cal.4th 522, and, based on the totality of the circumstances, found he was guilty of murder as a "major participant" who "acted with reckless indifference to human life" in the felony during which Hatfield was killed (§ 189, subd. (e)(3)). Viewed in the light most favorable to the judgment, the evidence is sufficient to support the trial court's finding that beyond a reasonable doubt defendant was a major participant who acted with reckless indifference to human life.

IV.

DISPOSITION

The trial court's order denying defendant's petition for resentencing is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

MILLER

J.